All right. Please, the Court, may I address the interpreter issue first? By all means. I think Mr. Rodriguez, Mr. Gonzalez's trial counsel, really had the better argument before Judge Silver when he was saying that there was really not an interpretation or a translation done. And I reviewed the record from North Carolina, and it was clear that the judge was asking the translator or interpreter questions, and then she apparently or he apparently would consult with my client and then say yes or no or he understands that. And that's not, in my view, that's not a real-time interpretation. The gold standard, of course, is the United States District Court in Phoenix and other district courts that use certified court interpreters. They are amazing. They can be used. But, you know, this is a hard argument. He did have it. He did have the assistance of an interpreter in that North Carolina case. He didn't have the gold standard, but he had an interpreter. Well, but he had an interpreter. He had something. The docket and the transcript all reflect that an interpreter was standing right next to him at the time he had his colloquy with the judge. This is not the strongest argument that you've got, I think, to my perspective. I don't speak for my other colleagues, but I just don't think it's the case. They're nodding their heads, so. I just don't think that it's all that persuasive. I think the other he made the this argument was made in the context of objecting to whether or not his prior crimes in North Carolina were crimes of violence for purposes of the 16-level enhancement under the Guidelines. Right. Right? Right. There were two. And he made the argument, he objects, but everything is conflated. That is, he objects to the use of these prior convictions. He primarily does it on the basis that it was not, in the prior case, these prior convictions should be invalidated because it was not effective assistance to counsel. He effectively didn't have any counsel, and so, therefore, he challenged these prior convictions, and therefore, they shouldn't be used. But then he also says, well, these are not crimes of violence. Right. But he doesn't elaborate on why they're not crimes of violence. I'm sorry, go ahead. He doesn't elaborate. He doesn't explain. Right. He doesn't offer an argument why they are not crimes of violence under what we call the categorical approach. And there are two crimes. One was assault with a deadly weapon inflicting serious bodily injury. Right. And there was another one, shooting into a house, shooting into a dwelling. Right? They were two separate crimes. As I recall that case, my client was convicted of shooting into an apartment building and also assaulting two men who were on the apartment steps. And I think the factual basis was that he shot one person in the leg, and then I think he hit the other person with a gun. And in doing so, the bullets went into the house. Right. Right? Right. Okay. So if you look at the brief, even though there's this argument that these are not crimes of violence, they shouldn't be used to aggregate, you know, to enhance the penalty, there's really no analysis under the categorical approach. And I want to know why not. Well, I can't speak for Mr. Rodriguez. Well, you did this brief, didn't you? Right. Well — Don't blame it on him. I mean, you're the appellate counsel. No, I know. I mean, were you waiving that claim? I mean, is that — Well, you know, I didn't — I mean, you just didn't think about it? You know, I didn't think about it enough. But, you know, if there's a question in the Court's mind about whether the crimes were categorically a crime of violence, I think you can look at the record and make your own determination. You're not handcuffed by the probation officer's assessment. Well, let me ask you this. The United States attorney recently, I guess, in looking at the brief, she saw this — the issue about crimes of violence beyond just the interpretation issue. And she recently filed a 20HA letter, sort of tipped off kind of what the issues are. Did you look at that? I don't think I did. You didn't get it. Pardon me? You didn't get it. I can't say for certain that I got it. But that — that — I — I — I know, but — That didn't — that didn't trigger anything in your mind, did it? No. Thank you. Well, I don't know. I've got one on the record. Go ahead. Assessment of the extra-criminal history points, because the — Judge Silver believed there were four convictions. I think it was in error because Judge Spidey, under North Carolina law, consolidated all of those counts into one conviction. And I think there was harm to my client because if he didn't have the extra three points, he'd get a category 3 and 51. There were separate crimes. They were just consolidated for purposes of imposing the sentence. Very good. Running them all concurrently. There were separate convictions. I read the record where he said that he was making them a single conviction. That's how I read it. Okay. Thank you. Good morning, Your Honors. My name is Rachel Stoddard on behalf of the United States. May it please the Court, as reflected in my brief, it is the government's position the defendant was convicted of four separate felony crimes of violence out of North Carolina back in 2001, that he was represented by counsel in those cases, and that he benefited from the assistance of a Spanish-speaking interpreter. It's the government's position that the Court correctly calculated the offense level as well as the defendant's criminal history category, and correctly withheld a third level for acceptance of responsibility because the — Very good. Do you think the issue is properly before us as to whether or not the prior crimes were crimes of violence? I do, Your Honor. I noted in respect to Judge Paiz's comment, I did note in the sentencing transcript that Mr. Rodriguez in a couple different areas acknowledged that they would be crimes of violence. On page 104 in the record, he's discussing the fact that his client pled guilty previously, and he said the fact that he now has crimes of violence in the same case, he's to be given three additional criminal history points because of the presence of these three crimes of violence. And he's discussing the three in addition to the assault conviction. And then also, later in the record, he says that he did not object to the imposition of the criminal history points because it was properly calculated because they were crimes of violence. But he didn't really — see, the problem is he didn't — he identified — he gets the hint that there's crimes of violence here might be a problem. But he doesn't offer any argument to Judge Silvers. He might deny that. Well, why? You don't even get that far. From what you so far have always conceded that — he admitted that there were crimes of violence. He didn't contest them at all. Correct. Correct. I think he probably did concede that they were crimes of violence. He didn't contest it. How is that an issue on appeal? Well, it has been raised on appeal, and so I addressed it in my brief. For purposes of this Court's determination, the government did provide several documents to the district court. So is it like a plain-error review? I would argue that it would be a plain-error review, yes. But anyway, you think we can address it? Yes, Your Honor. Based on the record that was provided to the district court in this case, she not only had the charging documents of the defendant in those prior cases, she had the conviction documents, she had the transcript of the plea and sentencing hearings. Okay. Now, looking at all those, I think this is, you know, an issue that all of us have been struggling with. It's not very clear in the Ninth Circuit what we should do with these cases. But as I understand the North Carolina statute, first of all, you think they're categorically crimes of violence? I think that the discharge convictions, the discharge of a weapon into an occupied structure, I do believe that those are categorically crimes of violence. Because what? If you look to the statute itself, it's defined as any person who willfully or wantonly discharges or attempts to discharge a firearm into any building or structure while it is occupied. Isn't the North Carolina case law defined wantonly as tantamount to the same as reckless? In the Williams case, it defines wanton behavior as intentional wrongdoing and willful behavior as purposely and deliberately. And the Eastern District of North Carolina in the recent case that I did submit in my 28J letter, the Peral Dominguez case, that judge did go through a rather detailed analysis of the mental states, and he specifically found that in order to be convicted of the discharge statute, a defendant must commit the conduct intentionally. And so my position would be that categorically that is a crime of violence. But that was from a district court case, correct? That is correct. That is correct. Not the Fourth Circuit. Correct. Williams says what now? It says in State v. Williams 412. It says a conscious disregard of and indifference to the rights and safety of others, right? Isn't it almost the same as the reckless case? It says, and I'm looking at State v. Williams at page 412. It says in our view the words willful and wanton refer to elements of a single crime. Willful, as used in criminal statutes, means the wrongful doing of an act without justification or excuse or the commission of an act purposely and And then they continue that wantonness connotes intentional wrongdoing. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others. And so I read that to mean purpose and deliberate and intentional conduct. So it goes beyond reckless? Correct. Correct. And that's the shooting into the apartment house? Correct. Conviction? Correct, yes. And I do agree that the analysis for the assault conviction will be different. It's difficult. Yes. Yes. I do think that should be a modified categorical analysis because the case law elaborates on their statute that that can be committed. I'm sorry. Well, I'm sorry. I didn't mean to interrupt you. I mean, you're right that the other conviction is a little bit more difficult. But even this one, even this one on shooting into the building, it's not crystal clear to me, just in reading that district court opinion and looking at this Williams case. But why is the other one subject to the modified categorical analysis? Yes, Your Honor. And that reverts to the Jones case, and that's North Carolina State v. Jones, 538 S.C. 2nd. And actually, that case is quite instructive because it points out the difference in mental states that must be adopted by the perpetrator in violating these statutes. And in that case, they also distinguish between the fact that the discharge statute can be committed intentionally or has to be committed intentionally, whereas the assault with a deadly weapon inflicting serious injury can be committed through either intentional or negligent conduct. Negligent conduct. Yes. And so my belief would be that pursuant to DeCamps, this lays out essentially alternative ways of violating the statute, alternative findings that have to be made by a jury or by a judge to find the defendant guilty of this crime. Well, see, the problem is we have at least some cases that say if there's just alternative means of committing the same crime, it's not divisible. Aren't there? Aren't there cases that say that? In looking, starting with DeCamps itself and then going forward from that, the DeCamps court said that a statute is divisible when it lays out multiple elements in the alternative. So essentially they distinguish between a broad statute that covers a wide swath of conduct. Well, but the Ninth Circuit has reduced that part of DeCamps as saying either, well, first of all, that's just divisible, so it's alternative or elements, different elements. But it's not divisible. They're just simply different means of committing the same crime. Right? So here, so what is this? I understand what you're saying, Your Honor. Hard to tell, isn't it? It's, the language is hard to parse. My understanding and my belief is that essentially you look to what a judge or a jury would need to find to convict someone. I don't think there's any, is there any instruction that, or, you know, if you have to find specifically or the jury has to be unanimous on whether it's willful or wanton or anything like that? I don't think so. Well, if you look to the State v. Jones case, there actually was an issue because that was a DUI matter. It was a driving under the influence matter. And so there was a question of whether the defendant could be found guilty, whether they had to prove it was intentional conduct or whether merely negligent conduct sufficed. And so they do have to prove that up to either a court or the jury, either one, in order to substantiate a conviction under that statute. It has to be shown how the person committed the crime because it has later implications in their law. For example, if it's committed intentionally, it could be used for a felony murder statute, while if it's just negligently, it cannot be used for a felony murder enhancement, which came into play in the Jones case. Would you agree with this logic that North Carolina State, specifically, you're guilty of it, could assault another person with a deadly weapon and inflict serious injury, and State v. Jones said it could be both intentional conduct, recklessness, or carelessness. That is what triggers a modified approach, correct? Correct, Your Honor. Now, he was charged with violating that statute, and the indictment specifically said unlawfully, willfully, and coloniously did assault a victim with a handgun. If you oppose that standard for that charge, would that be a crime? Yes, Your Honor. But you first have to ask whether or not it's divisible. Correct, Your Honor. You have to decide whether or not it's divisible. Correct, Your Honor. That's the problem. Here's another quote from Williams, which I think you'll find interesting. Well, North Carolina Supreme Court said, in our view, the words, quote, willful and wanton, unquote, refer to elements for a single crime. The attempt to draw a sharp line between willful and wanton would be futile. So they're like the same thing, aren't they? Yes, Your Honor. The elements of each are the same. The willful and wanton mental states, their court finds to be the same, and they find it to be purposeful and intentional conduct. And I agree with Judge Quist. I see that I'm out of time. No, go ahead. Okay. I was just going to say that I agree with Judge Quist's comment. I do believe the first issue is whether the statute is divisible. If it is divisible, you look to modify categorical. And I believe the documents that were submitted to the court, which can properly be considered, do establish his conduct was intentional. I don't know. I'm not – you may – you may be right. I mean, the shooting of the building may be a crime of life. I guess I'm just not comfortable with the way in which this has all been presented. I have to give – I personally have to give it some thought. But anyway, I appreciate your argument and your comments. Thank you. Is there anything else the court would like me to address? No, we have some – the defense counsel had a minute for rebuttal, but we'll see. Okay, thank you. Yes.
judges: Quist, Tashima, Paez